## Davis, et al. v. Clay.

(Decided June 19, 1914.)

### Appeal from Johnson Circuit Court.

1. Boundaries—Location of Division Line—Evidence.—In an action involving a boundary line and its establishment, the question is one of fact and the evidence examined and held to support the finding of the lower court in favor of the plaintiff.

2. Boundaries—Location of—Evidence.—In an action to establish a boundary line, the title of neither party in the action being attacked, the plaintiff is entitled to use as evidence the line descriptions recited in the deeds of the defendant, and which his title papers call for.

J. F. BAILEY for appellant.

JOHN W. WHEELER, C. B. WHEELER for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This is a suit over a strip of ground three inches wide. There is an unoccupied strip 45 inches wide between the buildings owned by appellant and appellee. The only present use either party has for any of it is for a stairway to the second story of their business houses. Instead of building something serviceable and wide enough to be used in common, each insists upon building on his own account a stairway two feet wide for the sole use of the occupants of his own building. To do this he must take up 3 inches of ground claimed by the other party. In other words, each concedes to the other 21 inches from the wall of his building. There is no attack upon the validity of title under which each party holds. The only question is the location of the boundary line between them, and there is only 3 inches difference there.

Appellee Clay gets his title from the McDonalds and Prestons, while the title of appellant Davis comes through the Browns. In the Clay chain of title all deeds recognize and call for "the division fence between Roberts (Brown) lot" or refer to it as bounded on the east by "W. W. Brown's heirs' lots." So Clay's boundary is limited by this Brown line, and in this way it becomes necessary to locate the Brown line in order to decide the case.

The Brown lot is at a street corner and was purchased from Roberts in 1869. Soon afterwards Brown erected a two room brick building fronting on Main street. His calls begin at the street corner, and run back from Main street 160 feet, and then 54 feet across in the rear, and then 156 feet to a stake on Main street, then with Main street to the beginning. Assuming the lot to be a rectangle, and this last call to have the same measurement as the rear, Brown's lot fronts 54 feet on Main street. The building did not cover all of the Main street front, nor did it extend to the rear of his lot. A fence was erected by Brown on the line between his property, and the McDonald-Preston property up the street, and this fence, extending from Main street to the rear of the Brown lot, was recognized by the McDonalds and Prestons as the dividing line. The fence was not kept in repair, or at least that part of it running from Main street to the end of the brick building, so that when appellant, Davis, got his deed in 1905 for the store room, or that half of the brick building next to the disputed line, none of the fence along the store was left, unless it was a few

posts. F. A. Brown, who is a son of W. W. Brown, says that part of the fence had been torn away some while before that, and that he assisted in doing so, and that while his father was the owner of the lot, he (the father) planted a stone in the sidewalk curbing on Main street in line with the torn down fence. The fence on the rear end of the lot was joined to the rear end of the store. Appellant claims this fence stood 30 inches from the brick wall. No remnant or sign of it is there now, but he proves by several witnesses the existence of a locust tree in various stages of growth just within the Brown side of the fence. They begin to speak of it when it was just a sprout an inch in thickness, and the height of a man. An elm is also referred to at the rear end, and growing on the McDonald or Clay side of the fence. Neither of these trees now stand, and no attempt is made to locate the place where the elm stood.

Davis also proves that there was sufficient space for a cow to walk between the fence and the store, but the testimony for him is chiefly centered in the placing of this locust tree. Some describe it as another kind of tree. The root or stump of a tree is still there at the place where these witnesses say there was a locust, or some sort of a tree, and they measure to it from the wall 30 inches to the far side of the stump, and 27 inches to the inside. No witness says this is a locust stump. Davis also introduces in evidence measurements made from objects beyond Clay, tending to show that Clay has in his possession all the ground covered by his deed without encroaching on this 3 inch strip claimed by Davis, but this evidence is weakened by the failure to establish any fixed or recognized point beyond Clay from which to measure down to this disputed line.

Since the time when F. A. Brown says the stone was planted in the sidewalk curbing in line with the torn down division fence, concrete walks have been laid on Main street, and in this way all marks or evidence of an original corner have been obliterated. Concrete walk seven feet in width has also been laid on the Cross street side of the brick building. The title to the ground up Main street from the Brown lot came to John C. Mayo, and when he went to sell the Clay portion of it in 1903, he called F. A. Brown, who was the husband of one of the McDonald heirs, and in the presence of Clay, Brown undertook to locate the position of this stone which his father had placed in the division line. He located the

place at a point 12 to 15 inches from the brick wall. It should be understood that this action on Brown's part can not be considered in any sense as a waiver or ground of estoppel against Davis, because at that time Brown had no interest in this upper half of the brick building which subsequently came to Davis. Brown testifies of these circumstances related by Mayo and Clay, and he says the point, 12 to 15 inches from the brick wall, which he indicated to them is on the division line between the two lots, and his testimony and action in locating the division line is considered as evidence of the line only, and not by way of estoppel against Davis. From the evidence of Mayo and Clay, it appears that in order to avoid any conflict or encroachment, Mayo extended the Brown corner up further so as to make it 21 inches from the brick wall, and with that point as a corner, he conveyed to Clay, and it is this point Clay is contending for.

It is admitted by all the parties that the Brown building did not cover his Main street frontage. As above explained there was some distance between the building and the fence line. How much space was left between the building and the other corner next to Cross street no witness attempts to say. The beginning corner of the Brown lot, as conveyed to him by Roberts, 1869, is at "a stake on the southwest corner of Main and Cross streets." The proof shows that Brown left room for a pass way, or at least there has always been a walkway of some sort around his building down Cross street. In order to secure to the Browns all the frontage called for in the Roberts' deed, measurement must begin with the sidewalk curbing on Cross street. Measuring in this way the distance is 54 feet and 5 inches to the other corner of the brick building. The evidence leaves one in doubt as to whether the sidewalk curbing is the original line of Cross street.

In 1892 Brown conveyed to his daughter, Mrs. Sarah Preston, and her children the upper half of this brick building (the same now owned by appellant, Davis). Before that, he had conveyed the other half, or corner half, to his two sons, F. A. and T. C. Brown. In the conveyance to Mrs. Preston the description begins at "the partition corner of said Brick deeded to F. A. and T. C. Brown; thence a westwardly course with the said building about 24 feet, *one foot beyond the corner of said brick store.*"

In the settlement of the Preston estate, this property was sold by the master commissioner in 1905, and Davis took it by commissioner's deed. The deed gave this description of it: "Beginning at the center of partition wall, about 23 feet from the northeast corner of the Brown brick building; thence an eastwardly course with said building about 24 feet, being *one foot beyond the corner of said brick store.*" Accepting the phraseology of these title papers, it is apparent that W. W. Brown understood, and his vendees have subsequently recognized the division line as being about one foot beyond the wall of the brick store building. But appellants call our attention to the fact that these descriptions refer to the building, and not necessarily to the wall. In other words, where it says "one foot beyond the corner of the said brick store," it means one foot clear of the building as a whole, and not merely from the wall. The effect of this would be to figure the cornice above in the width of the building. They prove, and it is not disputed, that there is a cornice on the building from 18 inches to 20 inches wide, and adding one foot to this cornice would carry the division line 30 inches from the wall. He argues with some force that old man Brown was most punctilious in all his dealings with his neighbors, and was careful not to presume or encroach upon them, and that he never would have suffered the water to drop from the eave of his house on to the ground of another. This may have been Mr. Brown's view point, but when we come to consider that measurements are made and distances usually calculated from points on the surface, we are inclined to believe that these references in the deeds to the *store,* and to the *building,* mean the wall as it comes from the ground. In common practice, when naming a distance, people do not look up and estimate the width of a cornice, or climb to it and measure it. Moreover, a cornice has not that permanency which would lead one to refer to it as a land mark. In this case appellant's evidence shows that the cornice had been repaired and altered, and in fact is not as wide as it used to be. Nothing is more natural than that a brick wall should be preferred to a cornice as a marker in land boundaries. There is a probability that Brown had in mind a care for the water shed from his own roof, and for that reason erected his building "about one foot" from the line.

When it comes to locating the fence, and the stone placed by Brown subsequently, the guessing is quite contrary, and when it comes to confining the guess work to a matter of inches after a lapse of years, this is not surprising. The only remaining land mark is the brick wall, and the only tangible and definite evidence in the case, it seems to us, is that contained in the title papers from Davis back to Brown, and from these it is made clear that the division line is about one foot beyond the brick wall. Clay concedes the distance to be 21 inches. We are inclined to agree with the lower court that in fixing it at 21 inches, Davis gets all that he is entitled to. But we are reminded that Clay began this action in ejectment, and that he must recover on the strength of his own title; instead of upon his own strength, the judgment of the lower court allows him to recover on the weakness of his adversary's title. The point would be well taken if Clay's suit was an attack on the Davis title. Instead of attacking Davis' title, it recognizes and relies upon it, and all of Clay's title papers call for what is now known as the Davis line. The title of neither party in this action is attacked. There is but one question, and that is the location of the division Brown line; and to establish it, Clay is entitled to use as evidence the line descriptions recited in the deeds of his adversary, and which his title papers call for. In other words, instead of attacking defendant's titles, or attempting to show their weakness, he is relying upon and attempting to establish them.

Feeling that the lower court reached a correct conclusion under the facts, we have decided to affirm the judgment, and it is so ordered.